# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Seguro Medico, LLC and Arthur : <br>
Wayne Walsh, : <br>
              Petitioners : <br>
                              : <br>
           v. :   No. 805 C.D. 2023 <br>
                     :   Submitted: May 7, 2024 <br>
Pennsylvania Insurance Department, : <br>
              Respondent : <br>

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge <br>
                **HONORABLE CHRISTINE FIZZANO CANNON,** Judge <br>
                **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

**OPINION BY** <br>
**PRESIDENT JUDGE COHN JUBELIRER**         **FILED: June 7, 2024**

The Pennsylvania Insurance Department (Respondent) issued a letter on June 26, 2023 (Letter), indicating it would not vacate consent orders entered into by Seguro Medico, LLC (Seguro) and Arthur Wayne Walsh (Walsh) (collectively, Petitioners). Petitioners filed a petition for review seeking reversal of the Letter. (Petition for Review (Appellate PFR) ¶ 1, Wherefore Clause.) Because the Letter is not an appealable adjudication, we must quash the appellate petition for review.

## I. BACKGROUND

Petitioners filed a petition for review in this Court's original jurisdiction (Original Jurisdiction PFR) seeking mandamus and declaratory relief on June 26, 2023. *Seguro Medico v. Pa. Dep't of Ins.*, 313 A.3d 298 (Pa. Cmwlth. 2023) (*Seguro I*), *appeal filed* (Pa., No. 7 MAP 2024). In *Seguro I*, we sustained Respondent's demurrers to the Original Jurisdiction PFR, which sought mandamus and declaratory

relief with respect to the consent orders, and dismissed the Original Jurisdiction PFR.[1]

On July 25, 2023, Petitioners filed the instant Appellate PFR addressed to our appellate jurisdiction. Petitioners describe the Appellate PFR as "an alternative to" and "related to" the relief sought in the Original Jurisdiction PFR. (Appellate PFR ¶¶ 2, 3.) We now address the Appellate PFR.

The certified record in this matter includes two consent orders, one between Respondent and Walsh (Walsh Order), and the other between Respondent and Seguro (Seguro Order). We summarized the consent orders as follows in *Seguro I*:

> The Seguro Order begins with an acknowledgment of its rights under the Administrative Agency Law[4] and its waiver of the right to a hearing. [(*In re Seguro Medico, LLC*, CO-22-03-024, Certified Record at Tab A.[2])] The Order contains a Findings of Fact Section, in which [Respondent] found, *inter alia*, that Seguro provided its employees with sales scripts containing false information. (*Id.* ¶ 3(d)-(i).) [Respondent] found that Seguro had used those scripts to sell to customers and that Seguro employees identified themselves as an entity other than Seguro when answering calls. (*Id.* ¶ 3(j)-(k).) Moreover, it found that Seguro had allowed more than 5,000 applications for insurance to be submitted under Walsh's name when he was not licensed by [Respondent], along with several other misrepresentations regarding the identity of the employee submitting other applications. (*Id.* ¶ 3(l)-(o).) Finally, it found that the Nevada Department of Insurance had investigated Seguro, and in the course of that investigation, Seguro provided a false statement and forged a signature. (*Id.* ¶ 3(p).) Based on those facts, [Respondent] concluded that Seguro had violated several provisions of The Insurance Department Act of 1921[5] related to licensing[6] and provisions of the Unfair Insurance Practices Act[7] prohibiting unfair and deceptive acts.[8] The Order contained language that it was to be "the entire agreement of the parties" and that it could not be "amended or modified except by an amended order signed by all the parties [ ]." (*Id.*

---

[1] Petitioners appealed from this Court's Order sustaining Respondent's preliminary objections and dismissing the Original Jurisdiction PFR. (Pa., No. 7 MAP 2024). The Supreme Court noted probable jurisdiction on March 1, 2024.

[2] The Seguro Order can also be found at page 42a of the Reproduced Record.

¶ 10.)[] The Order required Seguro, *inter alia*, to surrender its licenses to do business in the Commonwealth. (*Id.* ¶ 5(b).) The Walsh Order, which was almost identical to the Seguro [O]rder, except not finding Walsh in violation of Section 611-A(17) of [T]he Insurance Department Act of 1921, 40 P.S. § 310.11(17), indicated that "[a]ll licenses . . . to do the business of insurance are hereby surrendered." ([*In re Walsh*, CO-22-03-025, Certified Record at Tab B[3]] ¶ 5(b).)

> FN4. 2 Pa.C.S. §§ 501-508, 701-704.
>
> FN5. Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 22-326.7.
>
> FN6. Specifically, the Order found Seguro in violation of Section 611-A(2), (6), (7), (11), (17), and (20) of [T]he Insurance Department Act of 1921, 40 P.S. § 310.11(2), (6), (7), (11), (17), (20). Section 611-A was added by Section 2 of the Act of December 6, 2002, P.L. 1183.
>
> FN7. Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. §§ 1171.1-1171.15.
>
> FN8. Both Orders found violations of Sections 4 and 5 of the Unfair Insurance Practices Act, 40 P.S. §§ 1171.4-1171.5.

*Seguro I*, 313 A.3d at 303-04.

In addition, the certified record contains the Letter,[4] signed by Deputy Insurance Commissioner David J. Buono, Jr. (Letter, Supplemental Certified Record.) The Letter states, in relevant part:

---

[3] The Walsh Order can also be found at page 83a of the Reproduced Record.

[4] In its brief, Respondent argues that this Court could not consider the Letter because the certified record did not contain it. In their reply brief, Petitioners point to the language of Pennsylvania Rule of Appellate Procedure (Rule) 1951(b), Pa.R.A.P. 1951(b), asserting that this Court can remedy the omission. Rule 1951(b) provides:

> If anything material to any party is omitted from the record or is misstated therein, the parties may at any time supply the omission or correct the misstatement by stipulation, **or the court may at any time direct that the omission or**

**(Footnote continued on next page…)**

This letter confirms receipt of your communication, dated June 16, 2023, concerning consent orders related to: Seguro []; [] Walsh; and Jesus Barrera.[]  As you note, the consent orders for Seguro [] and [] Walsh were negotiated between [Respondent] and legal counsel for each party.  If Seguro [] or [] Walsh had objections or concerns with the consent orders, those concerns should have been raised prior to signing the documents.

Regardless of license status, the [c]onsent [o]rders stipulated to [Respondent's] jurisdiction over each party and the relevant conduct occurred while Seguro [] and [] Walsh were actively licensed in Pennsylvania.  Furthermore, each consent order expressly states "[t]his Order constitutes the entire agreement of the parties with respect to the matters referred to herein, and it may not be amended or modified except by an amended order signed by all the parties hereto." Additionally, neither agreement contains contingencies or references to any other matter.  As such, [Respondent] will not rescind or vacate the consent orders.

. . . .

(*Id.*)

## II. DISCUSSION

Before we address Petitioners' arguments as to why the Letter should be reversed, we must address Respondent's argument that this Court lacks jurisdiction because the Letter is not an appealable adjudication.  Respondent argues that because this Court's appellate jurisdiction extends only to final orders, no appeal may lie here

**misstatement be corrected** and, if necessary, **that a supplemental record be prepared and filed**.  Failure of the agency to transmit part of the record of agency proceedings to the appellate court shall not be the basis for a finding of waiver.

Pa.R.A.P. 1951(b) (emphasis added).  Further, the certified record "shall consist of . . . [t]he order **or other determination** of the government unit sought to be reviewed."  Pa.R.A.P. 1951(a)(1) (emphasis added).  Because the Rule specifically empowers this Court to order supplementation of the record where a material item is omitted, here, the purported determination of Respondent, this Court ordered Respondent to transmit a supplemental certified record containing the Letter.  (Order 4/16/24.)  Respondent complied with the Order and transmitted the supplemental certified record on April 24, 2024.  The Letter can also be found at page 12a of the Reproduced Record.

4

because the Letter to Petitioners was not a final order. It argues that although some letters might constitute adjudications sufficient to count as final orders to invoke our appellate jurisdiction, the Letter here does not because it does not finally affect Petitioners' property rights. That is because it was the consent orders themselves that adjudicated Petitioners' rights, not Respondent's responsive Letter. Respondents set forth an alternative basis for our lack of jurisdiction, namely, the timeliness of the appeal given that the orders they are really appealing from are the consent orders, which were entered into 266 days prior to the instant Appellate PFR.

Petitioners counter that the Letter does amount to an adjudication under the definition set forth in Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101. They argue that because Respondent has statutory authority with respect to licenses, and Petitioners are licensees of Respondent, the Letter does constitute an adjudication. Their position is that because the licenses issued by Respondent are property rights, and because the Letter refused to reverse consent orders that modified those property rights, the Letter affected their property rights. Petitioners urge this Court to "reject the Department's jurisdiction argument" because, if adopted, "there would be no appellate judicial review of this matter and [Respondent's] refusal to vacate plainly unconstitutional orders would go unchecked." (Petitioners' Reply Brief at 4.)

We agree with Respondent that this Court lacks subject matter jurisdiction because the Letter is not a valid adjudication capable of invoking our appellate jurisdiction. We have explained that

> [w]hether a court has subject matter jurisdiction "inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs." *Domus, Inc. v. Signature Bldg. Sys. of Pa., LLC*, 252 A.3d 628, 636 (Pa. 2021) (quoting *Assouline v. Reynolds*, 219 A.3d 1131, 1137 (Pa. 2019)). The

5

class of cases a given tribunal may hear—in other words, its legal authority to adjudicate a given controversy—derives from "constitutional provisions or from statutory provisions . . . to establish courts and provide for their jurisdiction." Restatement (Second) of Judgments § 1 cmt. a (Am. Law. Inst. 1982). Indeed, our Supreme Court has made clear that our subject matter jurisdiction "is conferred by the Commonwealth's Constitution and laws." *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, 860 A.2d 25, 29 (Pa. 2004). In determining whether we have subject matter jurisdiction, we ask "whether [we could] enter upon the inquiry, not whether [we] might ultimately decide that [we were] unable to grant the relief sought in the particular case." *Id.* Because subject matter jurisdiction goes to the very essence of a court's authority to adjudicate a case, the issue of subject matter jurisdiction bears two exceptional features: no party may waive it, and the court may raise it sua sponte. *Domus*, 252 A.3d at 636. Given the gravity of the consequences flowing from a determination a court lacks subject matter jurisdiction, courts must address the issue with special care.

*Empire Roofing & More, LLC v. Dep't of Lab. & Indus., State Workers' Ins. Fund*, 312 A.3d 400, 405 (Pa. Cmwlth. 2024).

Based on the foregoing, we begin with the Pennsylvania Constitution, which provides that "[t]he Commonwealth Court shall . . . have such jurisdiction as shall be provided by law." PA. CONST. art. V, § 4. "Consistent with that constitutional mandate, the General Assembly enacted Sections 761 through 763 of the Judicial Code[, 42 Pa.C.S. §§ 761-763,] to provide for this Court's original and appellate jurisdiction." *Empire Roofing & More, LLC*, 312 A.3d at 405. At issue here is our appellate jurisdiction, and specifically Section 763 of the Judicial Code, which defines our subject matter jurisdiction with respect to appeals from government agencies. It provides that this Court has "jurisdiction of appeals from final orders of government agencies[,]" which specifically includes "[a]ll appeals from Commonwealth agencies under" Sections 701 through 704 of the Administrative Agency Law, 2 Pa.C.S. §§ 701-704. 42 Pa.C.S. § 763(a)(1). Accordingly, to

6

determine whether we have jurisdiction over a given petition for review of government action, we must necessarily turn to the cross-referenced sections of the Administrative Agency Law. Section 702 of the Administrative Agency Law, provides that

> [a]ny person aggrieved by an **adjudication** of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa.C.S. § 702 (emphasis added). Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101, the applicable definitional section for the Administrative Agency Law, defines adjudication, in relevant part, as

> [a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

Put simply, Section 763 incorporates the Administrative Agency Law's requirement of, and definition of, and an adjudication. Thus, we only have jurisdiction if an adjudication as defined by Section 101 of the Administrative Agency Law exists.

In *Breyan v. Department of Conservation and Natural Resources*, 202 A.3d 168, 171 (Pa. Cmwlth. 2019), we explained that

> for the action of an agency to be deemed an "adjudication," a two-prong test must be met. First, the agency must have issued a "final order, decree, decision, determination or ruling" and, second, that "final order, decree, decision, determination or ruling" must affect the "personal or property rights" of a party.

We reasoned that because the petitioner in *Breyan* was not among the class of individuals eligible to receive the benefits he sought, an agency's purported denial

7

of those benefits did not affect his personal or property rights.  Accordingly, we concluded that the letter in that case did not satisfy the second prong, and therefore, no adjudication existed, such that "there [was] no basis upon which an appeal may lie." *Breyan*, 202 A.3d at 173.

Like the letter in *Breyan*, the Letter here also fails the second prong of that test.  The Letter simply reiterates the position Respondent took in the consent orders and declines to reconsider that position.  The Letter specifically states "objections or concerns with the consent orders . . . should have been raised prior to signing the documents," points to specific language in the consent orders that they represent the "entire agreement of the parties . . . and . . . may not be amended or modified[,]" and expressly declines to "rescind or vacate the consent orders."  (Letter.)  In other words, it confirmed the status quo at that time.  Certainly, it is true that "professional licenses are property interests." *Seguro I*, 313 A.3d at 308.  However, it was the **consent orders**, not the Letter, that finally "affect[ed] the . . . property rights of" Petitioners. *Breyan*, 202 A.3d at 171.  (citation and quotation marks omitted).  And Petitioners purport to seek review of the Letter, not the consent orders.[5]

*Goldstein v. Department of Insurance*, 745 A.2d 1271 (Pa. Cmwlth. 2000), relied on by Petitioners, does not require a different result.  There, an insured petitioned for review of a "determination letter" issued by Respondent that his

---

[5] Even if the Letter could be considered a denial of reconsideration on the part of Respondent, our review of the order denying reconsideration **would not** extend to the merits of the consent orders, but only to whether the agency abused its discretion in **denying reconsideration**. *Steller v. Pa. Secs. Comm'n*, 877 A.2d 518, 522 (Pa. Cmwlth. 2005) (refusing to address the merits of underlying final order where petitioner had only appealed the order denying reconsideration).  Of course, a petitioner must seek reconsideration of an agency's order within 15 days of entry of the final order, 31 Pa. Code § 56.1; 1 Pa. Code § 35.241, and here, Petitioners sought review several months after entry of the consent orders.  Thus, to the extent we could view the Letter as denying reconsideration, we would conclude Respondent had not abused its discretion in denying it where the request was untimely.

8

insurer "made a reasonable decision to no longer accept installment payments from [the insured] and that it had no authority to regulate the insurer's payment policy decision[.]" *Id.* at 1272. Relevant here, this Court reasoned that the letter amounted to an adjudication for two reasons. First, because the letter dealt with the substance of a complaint filed by the insured, it was a "determination of the merits of the complaint . . . ." *Id*. at 1273. Alternatively, the Court reasoned it could amount to a "dismissal on jurisdictional grounds." *Id.*

The *Goldstein* Court did not explain in detail its analysis as to why the determination letter was an adjudication. Further, *Goldstein* is distinguishable because it involved a "determination of the merits" of the insured's complaint **in the first instance**. 745 A.2d at 1273. Here, as explained above, the determination on the merits occurred upon entry of the consent orders; Respondent merely reiterated its position in the Letter. Thus, the Letter fails the second prong of the test because it did not affect Petitioners' property rights—the consent orders did.

## III. CONCLUSION

In sum, Petitioners purport to petition for review, in our appellate jurisdiction, of a letter that does not amount to an adjudication under the Administrative Agency Law. Because Section 763 incorporates the Administrative Agency Law's requirement of an appealable adjudication for our appellate jurisdiction to be invoked, we must quash the instant Appellate PFR.

_____

**RENÉE COHN JUBELIRER,** President Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Seguro Medico, LLC and Arthur     :
Wayne Walsh,     :
         Petitioners    :
     :
         v.    :  No.  805 C.D. 2023
     :
Pennsylvania Insurance Department,    :
         Respondent    :

## O R D E R

NOW, June 7, 2024, the petition for review in the above-captioned matter is **QUASHED**.

_____
**RENÉE COHN JUBELIRER,** President Judge