# Feninger v. Capital Accumulations Services Inc.

*Daniel E. Farmer,* for plaintiff.

*Francis J. Farina,* for defendants Capital Accumulations Services and Bruno Giordano.

KEELER, *J.,* March 2, 1989 — This case involves an action brought under the Pennsylvania Securi-

ties Act of 1972, 70 Pa.C.S. §1-101 et seq. (Purdon Supp. 1988). It is presently before the court on a motion and a cross-motion for summary judgment. Since the basic facts are not in dispute, the case turns upon two issues. The first is whether the act applies to the transaction between Claude Feninger, plaintiff, and Capital Accumulations Services Inc. t/a CAS Financial Architects and Bruno Giordano, defendants. If the act does apply to the transaction in question, the second issue is whether plaintiff's claim was timely.

Plaintiff, a senior executive at ARA Corporation, had engaged defendants to assist him in his financial planning. Giordano was the controlling shareholder and employee of Capital Accumulations Services Inc. Over the course of this relationship, defendants attempted to find tax shelters to fit plaintiff's needs. One of these tax shelters was the cattle-breeding arrangements at issue in this case. Sometime in June or July 1984, Giordano brought the Livestock Breeders International cattle-breeding arrangement to the attention of plaintiff. Plaintiff later invested in two of these cattle-breeding agreements through defendants.

The cattle-breeding agreements consisted of a lease of cows for the purpose of insemination and gestation of calves. Also included in the agreement was a contract for management services with LBI or their affiliate, Old Chisholm Trail Genetics Inc. As part of the management agreement, LBI or OCTG was responsible for selecting the appropriate cattle for breeding, obtaining semen from a desirable sire, insemination, and overall management of the breeding venture. Any progeny from this venture become the property of the investor. The cost of the arrangement breaks down as follows:

| | |
|---|---|
| Lease of two cows during breeding | $11,000 |
| Lease of two cows during gestation and weaning | 1,500 |
| Management fee | 3,000 |
| Total | $15,500 |

Of this amount, only a portion is paid in cash and the remainder is financed. These agreements were represented as being tax deductible to the investor, but the IRS has since disallowed the deductions.

In July 1984, plaintiff signed an LBI cattle-breeding agreement purchased from defendants with Giordano acting as a sales representative for LBI/OCTG. On December 20, 1984, plaintiff purchased an OCTG cattle-breeding agreement from defendants. It is the December agreement which is the subject of this suit. Under the December agreement, plaintiff paid $155,000 in cash and signed an interest-bearing note and a security agreement for another $155,000. Plaintiff also signed a breeding-management agreement at this time. All of the documents were signed in Pennsylvania and given to Giordano, who acted as the intermediary between OCTG and plaintiff. These cattle-breeding agreements were never registered with the Pennsylvania Securities Commission.

On December 22, 1986, plaintiff filed the present action against defendants after receiving a copy of an IRS affidavit alleging fraudulent conduct in the operations of the LBI/OCTG cattle-breeding programs. Plaintiff seeks the return of his investment ($310,000) plus associated costs and interest. Plaintiff's action is based on violation of section 1-201 of the act which makes it unlawful to sell unregistered securities. 70 Pa.C.S. §1-201 (Purdon Supp. 1988). On June 24, 1988, defendants filed the present mo-

tion for summary judgment, claiming that the cattle-breeding agreement was not a security and, thus, not within the act. Defendants also assert, in the alternative, that plaintiff's claim was untimely. Plaintiff responded by filing a cross-motion for summary judgment on July 26, 1988. In its cross-motion, plaintiff asserts that defendants sold an unregistered security and that its claim was timely under the act. On December 9, 1988, this court granted the Pennsylvania Securities Commission's motion requesting leave to file an amicus curie brief on the issue of whether the investment in the present case was a security under the act. The amicus brief was received by the court on January 28, 1989, and has been considered in this court's decision.

The standards applicable to the determination of a summary judgment motion under Pa.R.C.P. 1035 are well established. Where the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits considered together reveal no genuine issue of material fact and where the legal effect of these materials supports the moving party, the moving party is entitled to judgment as a matter of law. *Wright v. North American Life Assurance Co.*, 372 Pa. Super. 272, 539 A.2d 434 (1988). The parties to this action are in agreement on the facts but differ in opinion about their legal significance.

I

The first issue that must be determined is whether or not the cattle-breeding agreement constitutes a security as defined by the act. The definition of security in the act includes any "investment contract." 70 Pa.C.S. §1-102(t) (Purdon Supp. 1988). Although the act does not define "investment contract," the

Superior Court has applied a definition followed by the U.S. Supreme Court. See *Martin v. ITM/Int'l Trading & Mktg. Ltd.*, 343 Pa. Super. 250, 494 A.2d 451 (1985). The definition of "security" under the Securities Act of 1933 also includes "investment contract." Because the Pennsylvania Act is so similar to the Federal Securities Act, it is appropriate to take notice of federal security law decisions. The Supreme Court's definition of "investment contract" should be applied to the present case because it represents the best definition of the term and was carefully tailored to avoid being over-inclusive.

In *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), the Supreme Court had to determine if the sale of small strips of land in an orange grove and a corresponding service contract was a security by virtue of being an investment contract. In the service contract, defendants agreed to cultivate, harvest and market the orange crops. In determining whether the agreement was an investment contract for the purposes of being a security under the 1933 Securities Act, the court stated that an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* at 298-9. Applying these criteria to the orange grove transaction, the court found the agreement to be an investment contract and, thereby, a security. *Id.* at 299. In addition, the court noted that it is immaterial whether or not there is a sale of property as part of the agreement; the dispositive factor is whether the definition of "investment contract" is met. *Id.* at 301.

As previously mentioned, the court in *Martin v. ITM/Int'l Trading & Mktg. Ltd.*, 343 Pa. Super. 250, 494 A.2d 451 (1985), applied the *Howey* test to determine if an agreement was an investment con-

tract within the definition of a security under the act. Although the facts of *Martin* can be distinguished from those in the present case, the important point was the adoption of the *Howey* definition of investment contract for the purpose of defining what is a security. Applying the *Howey* definition to the case at bar, it is undisputed that plaintiff invested money ($310,000) in a cattle-breeding agreement on December 20, 1984. The parties' disagreement concerns the characterization of the facts for the purpose of meeting the second and third elements of the *Howey* test.

The second element requires that there be a "common enterprise." Since no Pennsylvania court has expressly defined what is necessary to satisfy the commonality requirement, this court turns to federal court decisions on this issue. In order to establish commonality, the courts require a common interest between the investor and the party soliciting investors (the promoter) or a third party such that the fortunes of the investor are dependent upon the expertise and efforts of the promoter or third party. *SEC v. Continental Commodities Corp.*, 497 F.2d 516, 522 (5th Cir. 1974); *Waterman v. Alta Verde Industries Inc.*, 643 F. Supp. 797, 803 (E.D.N.C. 1986); *Plunkett v. Francisco*, 430 F.Supp. 235, 239 (N.D. Ga. 1977); see *Martin, supra*, (independent contracts with profits dependent on the effort of promoter satisfied commonality requirement). In the present case, plaintiff depended upon the expertise of OCTG to properly perform the insemination of the leased cattle in the hope that they would produce healthy and valuable offspring. While defendant argues that the success of the investment was only a function of its ability to shelter income from taxes, it is clear that the amount of current tax savings would be irrelevant if

the plaintiff did not get a return at least as large as the amount he invested. In order to own sufficient cattle to return the amount invested, plaintiff had to rely on OCTG because he was not knowledgeable in cattle breeding. Thus, the ultimate success of plaintiff's investment was primarily dependent upon OCTG's expertise and efforts to produce a sufficient herd of cattle for plaintiff to recover at least the amount he invested. This dependence satisfied the commonality element of the definition of investment contract.

The court now turns to the final element of the definition; whether plaintiff expected profits "solely from the efforts of the promoter or a third party." Although the third element specifies that profits are to be expected *solely* from another's efforts, the courts have interpreted this loosely. The "solely" language in the *Howey* definition has been read to mean that the essential managerial efforts which affect the failure or success of the enterprise must be made by someone other than the investor. *SEC v. Glenn W. Turner Enterprises Inc.*, 474 F.2d 476, 482 (9th Cir.), cert. denied 414 U.S. 821 (1973); see *SEC v. Koscot Interplanetary Inc.*, 497 F.2d 473, 483 (5th Cir. 1974) (adopted the *Turner* definition of "solely"). In the present case, OCTG is responsible for making all of the vital decisions concerning the breeding and raising of progeny, and it is the successful breeding and raising which are the crucial aspects of this investment. Without sufficient progeny, no amount of managerial discretion vested in plaintiff could make the investment beneficial to him. OCTG was therefore responsible for the essential managerial efforts that would ultimately affect the success or failure of plaintiff's investment, and this fact satisfies the third element of the definition of investment contract.

Since the cattle-breeding agreement in the present case fits the definition of an investment contract, the court finds that the agreement is a security for the purpose of the act, and as a result, the act applies to the transaction in question. See 70 Pa.C.S. §1-102(t) (Purdon Supp. 1988). The act makes it unlawful for any person to sell an unregistered and non-exempt cattle-breeding security, defendants have violated the act; and the purchaser of it may recover, from the seller, any consideration paid plus interest at the legal rate from the time of sale. 70 Pa.C.S. §1-502 (Purdon Supp. 1988). Thus, plaintiff has a valid claim against defendants for the amount he has paid for the security plus interest.

## II

The court now turns its attention to the timeliness of plaintiff's suit. Defendants claim that plaintiff's action was not filed within the statutory period and is barred. The appropriate statute of limitations in this case is found in section 1-504(b). 70 Pa.C.S. §1-504(b) (Purdon Supp. 1988). Section 1-504(b) provides, in pertinent part, that an action under section 1-502 must be "[b]rought before the expiration of two years after the violation upon which it is based or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting such violation, whichever shall first expire." *Id.* Defendants contend that the one-year limitation period in this statute applies to bar plaintiff's claim because he knew or reasonably should have known that the breeding agreements were not registered. Defendants further contend that plaintiff is chargeable with this knowledge at the time of purchase or shortly thereafter.

While it is true that in the exercise of reasonable diligence plaintiff should have known or could have discovered that the agreements were not registered, this knowledge is relevant only if the investment is a security because only then does the act require registration. Thus, in order for plaintiff to have reason to know "the facts constituting such violation" he must (1) have reason to know the investment is a security and (2) have reason to know it was not registered pursuant to the act. Defendants' argument presupposes that plaintiff should have known that it was a security for the purposes of the act. As a practical matter, the question of a violation of the act will most likely be addressed once the investor has been notified of a disallowance of deductions by the Internal Revenue Service, as in this case, or is apprised of some other problem with respect to the investment. Unless and until such a problem arises, in a situation where the investment is not clearly a security, an investor has no cause to address the question of whether or not the transaction involves an investment contract. Thus, there may be a myriad of situations where notice of the limitations has run which deprives the investor of any remedy under the act against the wrongdoer. In this case, the court finds that it would be unreasonable to hold plaintiff accountable for such knowledge. Due to the unique nature of the investment in the case and the lack of any similar cases in this jurisdiction, it would be unfair to hold investors accountable for predicting the outcome of whether or not it is a security. The propriety of this outcome is further justified by the existence of paragraph 12 of the breeding-management agreement which specifically states that the investment is not a security. At the same time we are mindful of the principle that the seller's state of mind is not germane to a

finding that the act has been violated. The violation occurs when an unregistered security is sold. See 70 Pa.C.S. §1-201 (Purdon Supp. 1988).

Since the court finds that plaintiff should not have known and did not have actual notice that the investment was a security, the one-year limitation period under section 1-504(b) is inapplicable to the present case. The appropriate time limit under this section is the two-year period beginning on the date the unregistered security was sold, December 20, 1984. Plaintiff would have had until December 20, 1986, to file this action; but because that day was a Saturday, plaintiff had until the next day that the courts were open, Monday, December 22, 1986. See Pa.R.C.P. 106(b). The present action was filed on this date, and is therefore timely under the act.

## CONCLUSION

Since the facts of the present case are not disputed, the characterization of those facts is dispositive of the parties' motions. This court holds that the cattle-breeding agreement sold by defendants on December 20, 1984, to plaintiff was a security for the purpose of the Pennsylvania Securities Act of 1972. The court further holds that the plaintiff's action was timely because the two-year limitation period was applicable to the present case. In the absence of a genuine issue of material fact, plaintiff is entitled to judgment as a matter of law, and his cross-motion for summary judgment will be granted. Defendant's motion for summary judgment is accordingly denied. In accordance with this ruling, the court will schedule a hearing on assessment of damages forthwith.