602 A.2d 438

**Ralph J. ARDOLINO, Petitioner,**

v.

**PENNSYLVANIA SECURITIES COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1991.

Decided Jan. 15, 1992.

Edmunds J. Brokans, for petitioner.

Jurij Trypupenko, for respondent.

Before SMITH and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Ralph J. Ardolino appeals from an order of the Pennsylvania Securities Commission (Commission) prohibiting him from securities trading and related activities for making false and misleading statements in commission filings. We affirm.

Ardolino was a licensed securities agent from 1974 to 1986, and had taken three securities examinations. He was

also a "promoter" [1] and "control" [2] person of the following Pennsylvania limited partnerships: Eastern Property Development Associates (EPD), Macungie Medical Associates (MMA), Brighton Associates (BA), and Dery Silk Mill Ltd (DSM) (collectively the Ardolino Limited Partnerships). Ardolino was an officer and substantial stockholder of corporations which were the general partners of EPD and DSM, and his wife was an officer and substantial stockholder of corporations which were the general partners of MMA and BA.[3]

Between November 1983 and October 1984, shares in the Ardolino Limited Partnerships were sold to forty-four Pennsylvania residents for approximately $2,020,000.00. Those shares were sold despite the fact that no registration statement [4] or exemption notice [5] had been filed with the Commission.

On April 27, 1985 an exemption notice for a separate limited partnership, Allentown Outlet Mall (AOM), was filed with the Commission which disclosed Ardolino's interests in the Ardolino Limited Partnerships. The Commission required that rescission offers be made to investors in the Ardolino Limited Partnerships before it would issue a clearance letter for AOM.

On July 2, 1985, exemption notices for the Ardolino Limited Partnership were filed with the Commission. Included with the filings were copies of letters advising the investors of the current status of the partnership and that the partnerships were offering to repurchase their shares. Ardolino filed four separate affidavits swearing that he served the rescission letters on the investors of the Ardolino

1. Section 102(*o*) of the Pennsylvania Securities Act of 1972 (Act), Act of December 5, 1972, P.L.1280, *as amended,* 70 P.S. § 1–102(*o*).

2. Section 102(g) of the Act, *as amended,* 70 P.S. § 1–102(g).

3. Inese B. Ardolino, Ardolino's wife, was also ordered to show cause concerning these infractions by the Commission, but the Commission dismissed that order with respect to her.

4. Section 203(d) of the Act, *as amended,* 70 P.S. § 1–203(d).

5. Section 206 of the Act, *as amended,* 70 P.S. § 1–206.

Limited Partnerships, but that no investors accepted the offers. In fact those rescission letters were never sent.

The Commission concluded that Ardolino's affidavits constituted false and misleading representations in violation of Section 407 of the Act, *as amended*, 70 P.S. § 1–407. Consequently, the Commission ordered him to abstain from securities trading and related activities for two years and also ordered him to pay $10,054.80 in investigative and legal costs incurred by the Commission.

■ On appeal we are obliged to affirm the agency's adjudication unless we find that it violates constitutional rights, is contrary to law, or is based on findings of fact which are not supported by substantial evidence. *Harmony Volunteer Fire Company and Relief Association v. Pennsylvania Human Relations Commission*, 73 Pa.Commonwealth Ct. 596, 459 A.2d 439 (1983). Substantial evidence is that evidence which a reasonable person might accept as adequate to support the conclusion reached. *A.P. Weaver and Sons v. Sanitary Water Board*, 3 Pa.Commonwealth Ct. 499, 284 A.2d 515 (1971). With these principles in mind we turn to the issue raised in this appeal.

Ardolino raises the following issues on appeal: 1) whether the Commission's finding that Ardolino violated Section 407 of the Act can be sustained in the absence of proof of scienter; 2) whether the two-year ban on trading is an abuse of discretion; 3) whether the lump-sum investigative and legal costs assessed are improper and excessive; and 4) whether the Commission's order is supported by substantial evidence.

■ Ardolino first argues that the Commission's conclusion that he violated Section 407(a) of the Act is erroneous because the Commission failed to prove that he *knowingly* made the false or misleading statement in his filings. Section 407(a) provides:

It is unlawful for any person to make or cause to be made, in any document filed with the commission or in any proceeding under this act, any statement which is, at

the time and in the light of the circumstances under which it is made, false or misleading in any material respect or, in connection with such statement, to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

His explanation is that his attorney prepared all of the documents including the affidavits and that he signed them without knowing what they contained. The Commission rejected the notion that scienter is an element of the prohibition of Section 407(a).

In *Commonwealth v. Stockard,* 346 Pa.Superior Ct. 263, 499 A.2d 598 (1985), *appeal dismissed,* 518 Pa. 180, 542 A.2d 985 (1987), the Superior Court considered whether scienter was required for a *criminal* conviction under Section 511 of the Act, *as amended,* 70 P.S. § 1–511, and concluded that it was required. The court reached that conclusion because Section 511 specifically states that criminal penalties are appropriate for *willful* violations of the Act.[6] To understand that holding fully and its implications for this case an analysis of the Act's structure is beneficial.

Sections 401 through 407 detail what are considered to be fraudulent and prohibited practices. Section 401 prohibits certain actions connected to security sales and purchases; Section 402 concerns activities involving market manipulation; Section 403 concerns prohibited transactions for broker-dealers and agents; Section 404 and 405 concern actions by investment advisors; Section 406 concerns insider dealing; and finally Section 407 prohibits misrepresenta-

**6.** The entire provision of Section 511 reads:
Any person who *wilfully violates* any material provision of this act, except section 407(a), or any rule under this act, or any order of which he has notice, or who *violates section 407(a) knowing* that the statement made was false or misleading in any material respect, may be fined not more than five thousand dollars ($5,000) or imprisoned not more than five years, or both. Each of the acts specified shall constitute a separate offense and a prosecution or conviction of any one of such offenses shall not bar prosecution or conviction for any other offense. No indictment or information may be returned under this act more than five years after the alleged violation. (Emphasis added.)

tions in securities filings and misrepresentations regarding the approval of the Commission in connection with any securities.

The legislature did not provide in any of these sections that it was concerned only with "wilful" conduct or otherwise indicate the standard by which that conduct should be measured.

In the liabilities provisions, however, the legislature indicates the different standards of conduct and the resulting consequences. For example, Section 501(a) provides *inter alia* that one who offers or sells a security by means of an untrue statement may be held civilly liable by a buyer if the seller knew or "in the exercise of reasonable care could not have known of the untruth." Section 501(g) contains this same standard of care and provides for civil liability if it is not met. In order for criminal penalties to attach, however, the prohibited conduct must rise to the level of willfulness. Section 511 of the Act. *Stockard* dealt with a criminal penalty and therefore the willfulness standard was used because of the express use of that standard in Section 511 even though Section 401 which designated the prohibited action did not specify that standard.

At issue in this case is not a criminal sanction, but rather the censuring of a licensed agent. The authority for such action is contained in Section 305(a) of the Act which provides in part:

The commission may, by order, deny, suspend, or revoke any registration or may censure any registrant if it finds that such order is in the public interest and that such registrant or applicant, or in the case of any broker-dealer or investment adviser, any affiliate thereof, whether prior or subsequent to becoming associated with such person:

(i) Has, in any application for registration or in any report required to be filed with the commission under this act, or in any proceeding before the commission, *wilfully made* or caused to be made any statement which was at the time and in the light of the circumstances under which it was made false or misleading

with respect to any material fact, or has *wilfully omitted to state* in any such application, report or proceeding, any material fact which is required to be stated therein or necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or has *wilfully failed to amend* or supplement such an application, report or statement in a timely manner in accordance with rules which may be adopted by the commission. (Emphasis added.)

Section 305(a) of the Act, *as amended,* 70 P.S. § 1–305(a). This provision like the one in *Stockard* requires that the misrepresentations be wilfully made before the penalty may attach. Consequently, even though Section 407 does not require willfulness, this provision governing civil penalties clearly does specify that standard.

■ We are satisfied that Ardolino's actions rose to the level of wilfulness. The Act itself does not define "wilfull," but the Crimes Code equates it with "knowing." 18 Pa.C.S. § 302(g). See also *Stockard.* Ardolino signed and filed the affidavits stating that he had sent the rescission letters to the investors. He had to have known that he did not do so. Although he would have us believe that his attorney was responsible for this false statement, the facts established by the Commission do not support that position and we are without power to find new facts.

■ The next issue raised by Ardolino is whether the two-year ban on trading is an abuse of the Commission's discretion. Section 305 does not provide any guidelines to suggest what censure would be appropriate for a willful violation of Section 407(a), nor have we found any cases to guide us. We note, however, that Section 511 of the Act provides for criminal penalties of a fine of not more than $5,000.00 or five years imprisonment, or both for each wilfull violation of Section 407(a). Since Ardolino filed false affidavits in connection with four distinct securities offerings he could have been fined up to $20,000.00 and imprisoned for twenty years for his actions. We believe that the

severity of these penalties is a strong indication of the legislature's desire to discourage violations of this Act. We find, therefore, that the two-year ban on trading was within the discretion of the Commission.[7]

■ Ardolino also argues that the Commission erred in assessing investigating and legal costs in the amount of $10,054.80. The Commission counters this issue by arguing that Ardolino waived that by failing to raise the issue before the Commission. The Commission's argument is sound. Parties who fail to raise issues before administrative agencies may not raise them for the first time on appeal. *Pittsburgh–Johnstown–Altoona Express Inc. v. Pennsylvania Public Utility Commission*, 123 Pa.Commonwealth Ct. 237, 554 A.2d 137 (1989). The reasoning behind this rule is to provide the agency the opportunity to correct its own error, as well as to give us the benefit of its expertise and reasons for its actions. Ardolino's failure to abide by this rule precludes our consideration of the issue concerning the appropriateness of the costs.[8]

Finally, we turn to the substantial evidence question. The brief filed on behalf of the Commission calls our attention to numerous specific references in the record to testimony which supports the findings made by the Commission. We have carefully reviewed the entire record and we agree with the Commission that the evidence satisfied the *A.P. Weaver & Sons* criteria designated above. Ardolino's brief, on the other hand, is premised on the notion that his attorney was responsible for the false statements and

7. We also note our general rule that we defer to the discretion of the agency when the matter at issue calls for its special expertise. *Kwalwasser v. Department of Environmental Resources*, 131 Pa.Commonwealth Ct. 77, 569 A.2d 422 (1990). We believe the need to guarantee the integrity of the securities market and the measures necessary to attain that goal to be matters better left to the discretion of the Commission.

8. Furthermore, in light of the Order to Show Cause and Notice of Hearing originally issued on July 11, 1989 and re-issued on August 3, 1989, Ardolino knew that the Commission could order administrative sanctions including the requirement that he pay investigative costs and other costs if violations were proved. Reproduced Record, p. 5a.

that he merely signed what he was told to sign. The Commission did not find that the events transpired that way and we are unable to make new findings of fact on appeal. Our scope of review with regards to facts is limited to finding whether they are supported by the evidence. *Id.*

Accordingly, we affirm.

## ORDER

AND NOW, this 15th day of January, 1992, the order of the Pennsylvania Securities Commission in the above-captioned matter is hereby affirmed.