**Joseph S. SCHWALM, Petitioner**

v.

**PENNSYLVANIA SECURITIES COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 2, 2009.

Decided Feb. 2, 2009.

Joseph S. Schwalm, petitioner, pro se.

Michael J. Byrne, Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Joseph S. Schwalm (Schwalm) appeals *pro se* an order of the Pennsylvania Securities Commission (Commission) finding that he violated Section 301(b) of the Pennsylvania Securities Act (Act),[1] 70 P.S. § 301(b), by selling unregistered securities in Pennsylvania. As a result, the Commission barred him from working as a securities representative in Pennsylvania and imposed a $140,000 administrative assessment and a $35,195.96 assessment for investigative and legal costs that the Commission incurred. On appeal, Schwalm contends that his due process rights were violated and that constitutional violations occurred because the Commission applied laws *ex post facto*.

This matter involves Schwalm's sale of viatical settlement contracts[2] and universal leases[3] that he sold, and the following facts are not in dispute: between June 1997 and September 1998, on behalf of Mutual Benefits Corporation (Mutual),

---

**1.** Act of December 5, 1972, P.L. 1280, *as amended.*

**2.** Viatical settlement contracts are contracts in which an investor can purchase a fractional interest in a life insurance policy of another, generally one who is terminally ill. The investment is made at a discounted amount and the investor receives the full pro-rata amount of the death benefit upon the death of the insured.

**3.** The universal leases involved time share interests in vacation properties located in Cancun, Mexico, and included three option packages.

Schwalm offered and sold viatical settlement contracts to at least 13 Pennsylvania residents for a total amount of at least $345,812. From December 1998 to May 1999, Schwalm worked for Beneficial Assistance, Inc. (Beneficial) selling viatical settlement contracts. He sold two contracts to two Pennsylvania residents for a total of $49,910. He received $25,601 in commissions. During the time Schwalm was selling the viatical settlement contracts, he was a registered agent with Hackett Associates, Inc. and Cantella & Co., Inc.

Beginning in May 2001, Schwalm began selling universal leases offered by Yucatan Resorts, S.A. de C.V. (Yucatan) located in Cancun, Mexico. Investors had three options when purchasing the time share: (1) they could use the property for the allotted time each year; (2) they could rent the time share out to third parties; or (3) they could hire a management company to rent the property on behalf of the client and then pay the client an annual return on the lease of between 9% and 11%. If an investor chose the third option, a related company called Majestic Travel acted as the management company. Through 2002, Schwalm sold 17 Pennsylvania residents time shares under option three for an aggregate sum of $1.1 million, and received a sales commission of $103,000.[4]

On September 15, 2005, the Commission issued an order to show cause to Schwalm, alleging that he had violated Sections 201, 301 and 401(b) of the Pennsylvania Securities Act of 1972(Act)[5] by engaging in the sale of non-registered, non-exempt securities, transacting business as an agent of a broker-dealer or issuer while unregistered or while affiliated with another broker-dealer, and making untrue statements of material fact and/or omitting to state material facts in connection with the offer and sale of the securities. Schwalm responded *pro se* to the order to show cause, maintaining that he had not been selling securities. A hearing was held before a Commission hearing officer (Hearing Officer) in May 2006 and by that time, Schwalm had obtained counsel and was represented at the hearing.

At the hearing, Commission securities examiner Zachary Ortenzio (Examiner Ortenzio) testified that under the National Association of Securities Dealers (NASD) Rule 3040,[6] an agent who wished to engage in private securities transactions had to request in writing permission from his current brokerage firm. Once the request was made, the firm had to respond in writing, and if the request was granted, the firm had to carry the transactions on its books and records. Examiner Ortenzio stated that Schwalm had never made a request to either Hackett Associates, Inc. or Cantella & Co., Inc, and neither broker-dealer's records reflected the viatical settlement contract transactions. Regarding the universal leases, Richard Kiehl (Examiner Kiehl), a Commission securities examiner, testified that Schwalm told him that his sales tactic was to offer only option three.

Four individuals who purchased viatical contracts testified that they had purchased viatical settlement contracts and were told

---

4. At the hearing, it was determined that at the time Schwalm was selling the universal leases, he became a registered agent with Allegheny Investments beginning in November 2001. In January 2002, the Allegheny Investments Compliance Officer notified Schwalm that he was no longer authorized to sell universal leases.

5. 70 P.S. §§ 1–201, 1–301 and 1–401(b).

6. Failure to comply with a NASD rule constitutes grounds for denying, suspending, conditioning or revoking a license under 64 Pa. Code § 305.019(c)(1)(xxi).

that the rate of return was guaranteed at either 21% or 24% for 18 months. They also testified that Schwalm did not explain the risks of the investment—that the viator might surpass his or her life expectancy, that they might be liable for life insurance premiums should the viator surpass his or her life expectancy, or that the insurer or viatical settlement company could become insolvent.

Two individuals who purchased the universal leases testified that they had sought to obtain better returns on their investments and were guaranteed a 9% or 11% annual return on their investment. They stated that they chose to have the management company rent out the time share because that was the only option with which they were presented by Schwalm. Both testified that through Commission action, they had secured the return of their investment.

Schwalm testified that he had worked as an insurance agent since 1975 and that he had worked with securities as a registered representative since 1984. Schwalm stated that he did not think the viatical settlement contracts were securities at the time he was selling them, and that when he checked in Pennsylvania, he discovered that the Commonwealth had never addressed the issue of whether the viatical settlement contracts were securities. Therefore, Schwalm believed that they were not securities and were not regulated by the Commission. He testified that he stopped selling the viatical settlement contracts in 1998 because they were not maturing in the way Schwalm believed they would mature.

Regarding the universal leases, Schwalm testified that he began selling them in 2001 and that he viewed them as a time share product. Schwalm testified that he actually traveled to Cancun to inspect the properties before he began selling the universal leases. He stated that he had discussed all three options with prospective clients before making a sale, but that all of his clients chose to buy option three. Schwalm further testified that he had sought an advisory opinion from a lawyer at Baker & McKenzie as to whether the universal leases would be considered securities. The advisory opinion informed Schwalm that the universal leases would not be considered a security, and, therefore, Schwalm did not believe they needed to be registered. The advisory opinion was also admitted into evidence. Schwalm admitted that his authority to sell the universal leases was revoked and that he told clients that the returns on both products were guaranteed.

Following the hearing, the Hearing Officer found as fact that Schwalm had been engaged in the sale of viatical settlement contracts from June 1997 through September 1998 and from December 1998 through May 1999, and that they were securities under Pennsylvania law. Further, Schwalm had been involved in the sale of universal leases from May 2001 through May 2003, and that these instruments were securities. The Hearing Officer further found that Schwalm had not registered either the viatical settlement contracts or the universal leases as required by the Act, and that he had failed to disclose the risks of these investments to his clients and had explained that they were risk free. The Hearing Officer concluded that as a matter of law, the instruments were securities under the Act, that Schwalm had violated Section 201 of the Act, 70 P.S. § 1–201, that Schwalm was not registered under Section 301 of the Act, 70 P.S. § 1–301, and that Schwalm had made misleading statements to clients in willful violation of Section 401(b) of the Act, 70 P.S. § 1–401(b).

The Hearing Officer recommended that the Commission bar Schwalm for six months from acting as a broker-dealer, agent or investor, and that Schwalm pay $10,000 to the Commonwealth as an administrative assessment and pay legal and investigative costs.

The Commission's Enforcement Counsel filed exceptions to the recommended decision filed by the Hearing Officer arguing that the bar period and assessment amounts were inadequate given Schwalm's conduct and the amount of his commission, approximately $128,601. Enforcement Counsel recommended that Schwalm be permanently barred from selling securities and that the administrative assessment be increased to $350,000. Schwalm's counsel withdrew from the case after the recommended decision was filed and Schwalm filed *pro se* objections to the exception.

On June 2, 2008, the Commission issued its final order, agreeing with the Hearing Officer's findings of fact and conclusions of law, but altering the penalty to bar Schwalm permanently from securities activities and ordering him to pay $140,000 in administrative assessments, plus investigative and legal costs. Schwalm then appealed to this Court.[7]

Not challenging any factual finding, Schwalm raises three challenges to the Commission's Order by contending that:

- His due process rights were violated because the hearing process was not fair and impartial because he did not know he was allowed to call witnesses.
- Enforcement Counsel's actions in filing exceptions to the recommended decision

were prejudicial and resulted in unfair treatment and a harsher penalty.

- The Commission incorrectly applied securities law *ex post facto*, because at the time he was selling the viatical settlement contracts and the universal leases, there was no case law in Pennsylvania stating they were securities, ultimately arguing that the instruments were not securities.[8]

## I.

Procedural due process requires that an individual be given adequate notice of the charges against him and an opportunity to be heard. *Telang v. Bureau of Professional and Occupational Affairs,* 561 Pa. 535, 751 A.2d 1147 (2000). In the present case, Schwalm was afforded all the process to which he was due. The original order to show cause clearly listed all the charges against Schwalm, and he was given adequate time to respond. The hearing notice sent by the Commission explicitly stated that witnesses could be called and that Schwalm could call his own witnesses in his defense. Moreover, counsel represented Schwalm during the hearing; any concerns he had regarding witnesses and evidence should have been discussed with his counsel at that time. There is nothing in the record to suggest that the hearing was not conducted in accordance with administrative rules and procedures, and Schwalm had every opportunity to be heard.

## II.

Schwalm's assertion that Enforcement Counsel acted prejudicially in seeking a

---

7. Our scope of review of an appeal from a Commission order is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether substantial evidence was present. *Crooks v. Pennsylvania Securities Commission,* 706 A.2d 360 (Pa.Cmwlth.1998).

8. Schwalm raises either directly or tangentially issues that are waived because they were not raised below. It is well-settled that where an issue was not raised below, it will not be addressed for the first time in this court. Pa. R.A.P. 1551.

more severe penalty than the penalty levied against him is undoubtedly true, but seeking to increase the penalty is within prosecutorial discretion and is permitted.[9] The Hearing Officer is not the ultimate fact finder in such cases, but rather the Commission, and the Commission was not bound by the recommended order.[10]

Under the General Rules of Administrative Procedure, 1 Pa.Code § 35.211:

A participant desiring to appeal to the agency head shall, within 30 days after the service of a copy of a proposed report or such other time as may be fixed by the agency head, file exceptions to the proposed report or part thereof in a brief (designated "brief on exceptions").

Enforcement Counsel, as a participant, was permitted to file exceptions to the Hearing Officer's recommended order seeking that the Commission recommend harsher sanctions and by doing so did not violate any of Schwalm's rights.

## III.

■ Schwalm's argument that the Commission applied the law *ex post facto* to him regarding the definition of viatical contract settlements and universal leases as securities is without merit. Although the Latin phrase *"ex post facto"* literally encompasses any law passed "after the fact," it has long been recognized that the constitutional prohibition on *ex post facto* laws *applies only to penal statutes* which disadvantage the offender affected by them. *See Jae v. Good,* 946 A.2d 802 (Pa.Cmwlth.2008); *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30, (1990).

As to Schwalm's argument that the viatical settlement contracts and the universal leases were not securities when he sold them, Schwalm suggests that a product is not a security until it has been declared a security by a court or legislature. What that argument ignores is that both viatical settlement contracts and universal leases of the type Schwalm sold are securities as that term is defined by Section 102(t) of the Act, 70 P.S. § 1–102(t), has not changed from when the pertinent sales were made. It provides:

[A]ny note; stock; treasury stock; bond; debenture; evidence of indebtedness; share of beneficial interest in a business trust; certificate of interest or participation in any profit-sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting trust certificate; certificate of deposit for a security; limited partnership interest; certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease; membership interest in a limited liability company of any class or series, including any fractional or other interest in such interest unless excluded by clause (v); or, in general, any interest or instrument commonly known as or having the incidents of a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. All of the foregoing are securities whether or not evidenced by written document.

---

9. It was within the Commission's discretion to permanently bar Schwalm and to levy such administrative assessments up to $950,000 under Sections 602.1(c) of the Act, 70 P.S. § 1–602.1(c).

10. In his arguments, Schwalm also discusses facts that are outside the record in this case. As such, they are not discussed.

Pennsylvania courts have adopted the United States Supreme Court's definition of an investment contract as 'a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.' *Martin v. ITM/International Trading & Marketing, Ltd.,* 343 Pa.Super. 250, 494 A.2d 451, 453 (1985) (quoting *S.E.C. v. Howey,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)); *see also Feninger v. Capital Accumulations Services, Inc.,* 2 Pa. D. & C.4th 339, 343–45 (Com.Pl.1989). The test, known as the *Howey* test, comprises three elements. "First, there must be an investment of money. Second, that investment must be in a common enterprise, which means that returns on the investment depend on the efforts of the promoter or a third party. Third, the investor must expect profits solely from the efforts of the promoter or a third party." *See Howey,* 328 U.S. at 298–99, 66 S.Ct. 1100; *Stas v. Pennsylvania Securities Commission,* 910 A.2d 125, 129 (Pa.Cmwlth.2006).

In *Steller v. Pennsylvania Securities Commission,* 877 A.2d 518 (Pa.Cmwlth. 2005), we held that viatical settlement contracts were securities. As to universal leases involving time shares managed by an outside company, those instruments meet the *Howey* test as a security because they involve an investment in a common enterprise which depended on the success of a management company for returns on investment.

Viatical settlement contracts and universal leases are securities and the ones Schwalm sold were not registered as required, he was not deprived of due process, and the Act was not applied *ex post facto.* Accordingly, the Commission's order is affirmed.

***ORDER***

AND NOW, this *2nd* day of *February,* 2009, the June 2, 2008 order of the Pennsylvania Securities Commission is affirmed.