**Duc Cao NGUYEN, Petitioner**

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, STATE BOARD OF COSMETOLOGY, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 27, 2012.

Decided July 12, 2012.

James J. West, Harrisburg, for petitioner.

C. William Fritz, II, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Duc Cao Nguyen (Nguyen) petitions for review of the August 10, 2011 Final Adjudication and Order (Adjudication) of the Pennsylvania State Board of Cosmetology (Board), revoking Nguyen's license to practice as a nail technologist. For the reasons that follow, we will vacate the Adjudication and remand this matter to the Board for further proceedings.

On or about October 6, 2009, Nguyen pled guilty to a two-count superseding felony indictment in the United States District Court for the Middle District of Pennsylvania. (Reproduced Record (R.R.) at 142a.) Count I of the indictment provided:

> Beginning in approximately 2000 and continuing through on or about August 19, 2008, in York County and Dauphin County, Pennsylvania; New York, New York; San Francisco, California; Tennessee; and Vietnam, within the Middle District of Pennsylvania and elsewhere, the defendant, DUC CAO NGUYEN, aided and abetted by by [sic] others known and unknown to the United States, knowingly entered into a marriage with "T.V." for the purpose of evading provisions of the immigration law, said marriage occurring on or about August 3, 2005.

> All in violation of Title 8, United States Code, Section 1325(c) and Section 2.

(R.R. at 139a.) Count II of the indictment sought forfeiture of certain property traceable to the offense outlined in Count I, including (a) $134,682 in currency seized from Nguyen's last known address on file with the Department of State, Bureau of Professional and Occupational Affairs (Bureau); (b) a 2008 Toyota Highlander registered to Nguyen; (c) the contents of a bank account held in the name of "Da Vi Nails"; and (d) the contents of a bank account held in the names of Lynda and Tony Phan. On or about February 12, 2010, the federal court sentenced Nguyen to probation for a term of one (1) year, forfeiture of the property identified in Count II of the indictment, a $100 assessment, and a $1,000 fine. (R.R. at 4a.)

The underlying administrative proceeding began on June 8, 2010, when the Bureau caused the Board to issue an Order to Show Cause, wherein the Bureau contended that, based on Nguyen's conviction of the felony offense, the Board is authorized under Section 9124(c)(1) of the Criminal History Record Information Act (CHRIA),[1] to suspend, revoke, or otherwise restrict Nguyen's license. (Reproduced Record (R.R.) at 4a.) In his Answer to Order to Show Cause (R.R. at 29a–52a), Nguyen admitted all of the factual allegations set forth in the Order to Show Cause. He included one paragraph of New Matter, which provided:

> [Nguyen] was extended an extraordinarily lenient binding plea agreement by the United States Attorneys Office based upon mitigating factors that existed in his case and made such a binding agreement advisable in lieu of trial and determination by a jury. Accordingly, [Nguyen] requests a hearing at which he can bring to the attention of the Board, through testimony and evidence, the mitigating factors that motivated the

---

1. 18 Pa.C.S. §§ 9101–9183. Section 9124(c)(1) of CHRIA provides, in relevant part:

   Boards, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of trades, occupations or professions may refuse to grant or renew, or may suspend or revoke any license, certificate, registration or permit for the following causes:

   (1) Where the applicant has been convicted of a felony.

   18 Pa.C.S. § 9124(c)(1).

prosecution to enter into a plea agreement calling for a probationary sentence so that an appropriate penalty can be assessed by the ... Board.

(R.R. at 31 a.)

At or around the same time that the Bureau took the above-referenced administrative action against Nguyen, the Bureau took similar action against one of Nguyen's co-defendants in the federal criminal action, Lynda Dieu Phan (Phan). Like Nguyen, Phan was a licensee of the Board and pled guilty in the federal criminal action to the felony of conspiracy to enter into a "sham" marriage for the purposes of evading immigration law. She also, by way of guilty plea, forfeited the same property Nguyen forfeited as a result of his guilty plea. But Phan also pled guilty to the additional federal crimes of conspiracy relating to trafficking and forced labor. (R.R. at 264a–65a, 272a–75a.) Phan's sentence, therefore, was more severe. The federal court sentenced her to ninety (90) days imprisonment, followed by probation for a term of one (1) year with restrictions. The federal court also sentenced Phan to pay a $100 assessment and restitution of $300,000 to the victims of her crimes—(a) "T.V.," Nguyen's sham bride; and (2) "A.V."

A Statement Regarding Acceptance of Responsibility and Apology to [T.V.] and [A.V.], written and signed by Phan as part of her plea agreement in the federal criminal case (R.R. at 90a), provides, in pertinent part:

I am writing this as my apology to [A.V.] and [T.V.] as well as my Statement of Acceptance of Responsibility for the United States Probation Department. My attorney has explained to me that the "force" required by the law involved in this case can be mental as well as physical force and that in determining this element the individual cir-

cumstances and background of [A.V.] and [T.V.] must be considered. In light of this explanation, I fully accept responsibility and apologize to [A.V.] and [T.V.].

When I brought [A.V.] and [T.V.] to the United States from Vietnam I felt I was giving them a tremendous opportunity—an opportunity which my parents and family gave up everything to obtain. I fully admit that I was wrong in bringing them to this country and, upon reviewing their statements and documents from the investigation, it became clear to me that they felt exploited and taken advantage of by my actions and even my attitude. I was particularly impressed by the diary kept by [T.V.] outlining how sad and depressed she was living and working with me and I now believe that both of these women were taken advantage of and exploited by me by working long hours with few vacation days and being required to do chores such as cooking and cleaning in the various places where they lived with me. I realize now that I was wrong in arranging for them to come to the United States and I hope they find the type of lives they really want when they return to Vietnam.

... I apologize and accept responsibility for improperly bringing [T.V.] and [A.V.] to the United States and for mentally exploiting them while they were living and working with me.

(R.R. at 271 a.)

The Board consolidated for hearing purposes only the actions against Nguyen and Phan. (R.R. at 59a.) Nguyen and Phan were represented by the same counsel in proceedings before the Board. The Commonwealth's evidence at the hearing consisted only of the pleadings in the administrative cases against Nguyen and Phan, including the Orders to Show Cause, re-

sponses thereto, and all attached exhibits (marked as C–1 through C–4). Without objection from Nguyen's and Phan's counsel, the hearing examiner admitted the exhibits into the record. (R.R. at 63a.) The Commonwealth then rested.

Nguyen did not testify.[2] Counsel for Nguyen and Phan, however, called Phan to testify.[3] In general, on direct examination Phan testified how and why her parents brought her from Vietnam to the United States when she was approximately 15 years old. She testified that she went to high school and college. Following graduation, she started her own business—a manicure, nail salon business. She owned three stores. She testified about how she returned to Vietnam and decided to bring A.V. (a distant relative) and, six months to one year later, T.V. (Phan's cousin) to the United States for better lives. She admitted to doing so in violation of immigration law by setting up sham marriages. She testified about how she treated them when they came to the United States and how they eventually came to work in her nail salons and lived in Phan's home so they could save money. She also testified how she compensated T.V. and A.V. for their work at the salon. She testified about a dispute between her and T.V. and A.V. over money that both requested from Phan to help their families in Vietnam.

She also testified about a relationship between A.V. and a Vietnamese boy who was interested in A.V. She testified that T.V. eventually moved out without her knowledge. In terms of testimony about Nguyen, Phan testified that Nguyen shared a bedroom with her in her home. She also testified that Nguyen is the one who told her that T.V. had left the home. Finally, she testified to loving her job and her customers and that she wished to be able to continue to do the job for the rest of her life.[4]

Counsel for Phan and Nguyen also offered thirteen (13) exhibits, all of which the hearing officer admitted into the record. Eight (8) of the exhibits originated in the federal criminal proceeding. Three (3) of the exhibits were letters of support for Phan from customers. The remaining exhibit consisted of two (2) photographs of Phan, her daughter, T.V., and A.V.

At the conclusion of the hearing, the Bureau noted its position that it did not believe that Nguyen's crime was as serious as Phan's, but nonetheless warranted action by the Board. The Bureau recommended a suspension of Nguyen's license for two (2) years, following by a probationary period of twelve (12) months. (R.R. at 119a.)

2. Nguyen's counsel made the following statement during the hearing:

> Judge, insofar as [Nguyen] is concerned, I am not going to have him testify. There is a language problem. I think it's clear from the Petition that was filed that the prosecution, you've seen, is a completely different position than Lynda Phan. And they've recommended, I believe—on our negotiations, he was viewed differently than Lynda. And I believe that's correct. He was part of the marriage fraud and indicated that he was the husband of one of the girls and helped them get into the country. And there's no question he did that. But that's about all he did. And I think everybody agrees that

> Lynda Phan is the prime mover. [Nguyen], himself, is from Vietnam. He came over here several years ago. And I don't think it's necessary that he testify.
> (R.R. at 114a–15a.)

3. Phan's testimony is transcribed at pages 12 through 62 of the Hearing Transcript (R.R. at 64a–114a).

4. Phan also provided additional testimony on cross-examination and redirect examination. For purposes of the issues before the Court, however, we see no need to summarize that testimony.

On March 2, 2011, the hearing examiner issued a proposed adjudication and order pertaining to Nguyen. Her proposed adjudication included nine (9) numbered findings of fact, each of which focused on Nguyen's license status, home address, the criminal charges filed against him, and the disposition of those charges by guilty plea and sentencing. The hearing examiner concluded that Nguyen was subject to disciplinary action by the Board based upon his federal felony conviction for entering into a sham marriage with T.V. She noted the Bureau's recommended sanction, but she instead decided that the appropriate sanction was a suspension of one (1) year. (R.R. at 326a–34a.) On March 9, 2011, the Board issued a Notice of Intent to Review Proposed Adjudication and Order. (R.R. at 336a–37a.) This order advised the parties that the Board could substitute its own findings for those of the hearing examiner and impose a different sanction. The Board directed the parties to submit argument on the hearing examiner's proposed sanction in a brief on exceptions to the proposed adjudication.

In response, Nguyen's counsel filed a letter in lieu of a brief. (R.R. at 338a–39a.) The letter is in reference to both the Board's review of the proposed adjudication with respect to Nguyen *and* its review of the proposed adjudication with respect to Phan. According to the letter, the hearing examiner recommended that Phan's license be suspended for two (2) years. In the letter, counsel indicated that his clients accepted the hearing officer's decision. They requested, however, that the periods of suspension be staggered, so that at least one of them would be able to work and support their family.

The Board then issued the Adjudication, which is the subject of this appeal. The Board adopted some of the hearing examiner's factual findings, but it added some additional findings regarding *Phan's* conduct. The Board found that Phan travelled to Vietnam and recruited T.V. to work in her nail salon business. Adjudication Finding of Fact (F.F.# 7.) The Board found further that Phan enabled T.V. to enter into the country illegally through the sham marriage with Nguyen. (F.F.# 8.) The Board also found as fact that "[b]etween May 2005 and August 8, 2008, Phan forced T.V. to work for her without remuneration." (F.F.# 9.) The Board found that Nguyen acquired the property that he agreed to forfeit as part of his guilty plea not just from his criminal conduct, but Phan's criminal conduct as well. (F.F.# 10.)

Based upon its factual findings and CHRIA's revocation provision, the Board rejected the hearing examiner's recommended discipline and elected, instead, to impose the more severe sanction of license revocation. In reaching this decision, the Board looked not only to the facts pertaining to Nguyen's criminal conduct set forth in the superseding criminal information, to which Nguyen pled guilty, but also quoted the facts included in the separate superseding criminal information detailing *Phan's* illegal conduct. The Board also quoted extensively Phan's statement of apology to the victims of her crimes—T.V. and A.V. On mitigation, the Board recited the testimony *Phan* presented during the hearing. The Board also noted that Phan testified that she and Nguyen, though unmarried, lived together in the same home with a child that they shared, T.V., and A.V.

The Board embedded additional factual findings in the discussion section of its Adjudication, indicating the Board's belief that Nguyen was complicit, either by omission or commission, in *Phan's* crimes:

The consequences of [the crime of entering into a marriage for the purpose of

evading the immigration law]—*T.V.'s use in Phan's criminal scheme*—was in plain view of [Nguyen] because he lived with Phan and T.V....

... [Nguyen], through Phan, was able to involve the victim in the profession of cosmetology as a nail technician licensed by the Board. The Board finds a criminal scheme the object of which is to utilize the Board's licensing program to obtain involuntary labor unacceptable.

(Adjudication at 11.)

Based on the numerated and embedded factual findings, the Board provided the following reasons for its decision to revoke Nguyen's license:

> First, the Board finds the felony itself abhorrent. The crime of entering into marriage for the purpose of evading the immigration law is unacceptable for any individual, let alone for a professional licensee of the Commonwealth. *The consequences of the crime—T.V.'s use in Phan's criminal scheme—was in plain view of Respondent because he lived with Phan and T.V.* Respondent pleaded guilty to marriage fraud. That underlying criminal conviction may not be challenged in a subsequent professional disciplinary proceeding. The Board sees a federal felony conviction that resulted in harm to a young victim, a year's probation, and massive forfeitures of property traced to the offense to compensate the victims. The Board believes it is compelled to act in the public interest by revoking.

> Second, [Nguyen], through Phan, was able to involve the victim in the profession of cosmetology as a nail technician licensed by this Board. *The Board finds a criminal scheme the object of which is to utilize the Board's licensing program. to obtain involuntary labor unacceptable.* The Board believes that the protection of the public—workers in the industry, as well as customers who unwittingly are subjected to the work of practitioners under these conditions—demands that the Board revoke [Nguyen's] licenses. Revocation will deter [Nguyen] and others from using the Board's licensing program in this way again.

> Third, the Board believes that a licensee willing to commit this offense might be willing to commit others. The Board will not abide that possibility. The Board considers this crime to be grave and to render the person who commits it an unacceptable risk for future practice.

> Fourth, [Nguyen] has damaged the reputation and confidence of the public in the profession. The Board is not ignorant of the fact that many of its licensees are recent immigrants to this county. Thus, the *crimes that give rise to this matter* bring particular suspicion and disrepute to the industry and profession. The public must have confidence that the licensees rendering service are neither *committing these crimes* nor the victims of them.

(Adjudication at 11–12 (emphasis added).)[5]

■ On appeal,[6] Nguyen raises several issues, which can be distilled into three

5. In a similarly worded and formatted final adjudication, the Board also revoked Phan's license. On appeal from that final adjudication, this Court affirmed the Board in an unreported decision. *Phan v. Bureau of Prof'l and Occupational Affairs*, No. 1646 C.D.2011 (Pa.Cmwlth. May 7, 2012).

6. This Court's review of a final adjudication of the Board is limited to considering whether necessary factual findings are supported by substantial evidence, and whether the Board erred as a matter of law, or violated constitutional rights. 2 Pa.C.S. § 704. With regard to the penalties the Board elects to impose upon a licensee for a felony under CHRIA, we

overarching themes. First, Nguyen contends that the Board had a flawed understanding of Phan's felony convictions, which tainted its review of Nguyen's case. Second, Nguyen contends that the Board improperly imputed to Nguyen culpability for Phan's crimes, thereby basing its decision to revoke Nguyen's license on not only Nguyen's felony conviction, but also Phan's felony convictions. Finally, Nguyen contends that based only on his conviction of entering into a sham marriage with T.V. to evade immigration law and the evidence of mitigation provided at the hearing, the Board's decision to revoke his license was an abuse of discretion.

On the first claim of error by the Board, Nguyen argues that Phan only pled guilty to a single felony charge of conspiracy to commit marriage fraud in the federal criminal case. The Board thus misinterpreted Phan's guilty plea as extending to felonies relating to involuntary servitude and forced labor. This is the same argument that this Court considered and rejected in Phan's appeal of her license suspension. *See Phan*, slip. op. at 6–7. We reject it here as well for the same reasons.

We must, however, take a harder look at Nguyen's second assignment of error—*i.e.*, that the Board improperly imputed to Nguyen culpability for Phan's criminal conduct. Under what is commonly referred to as the Beauty Culture Law (the Law),[7] the Board has the following powers:

> The board shall have the power to refuse, revoke, refuse to renew or suspend licenses, upon due hearing, on proof of violation of any provisions of this act, or the rules and regulations established by the board under this act,

> *or for gross incompetency or dishonest or unethical practices,* or for failing to submit to an inspection of a licensee's salon during the business hours of the salon and shall have the power to require the attendance of witnesses and the production of such books, record, and papers as may be necessary. Before any licenses shall be suspended or revoked for any of the reasons contained in this section, the holder thereof shall have notice in writing of the charge or charges against him or her and shall, at a day specified in said notice, be given a public hearing before a duly authorized representative of the board with a full opportunity to produce testimony in his or her behalf and to confront the witnesses against him or her. . . .

Section 13 of the Law, 63 P.S. § 519 (emphasis added). The Board's Order to Show Cause in this matter, however, does not identify any of the grounds set forth in Section 13 of the Law as a basis for disciplinary action against Nguyen. Moreover, the Board did not even exercise its revocation authority under Section 13 in this case. Instead, the Board initiated this administrative proceeding based solely on the claim that the Board was authorized *under CHRIA* to take disciplinary action against Nguyen because of *his* felony conviction for marriage fraud. The legal authority of the Board to do so is not in dispute.

■ We have carefully reviewed the Order to Show Cause, the transcript of the proceedings before the hearing officer, and the hearing officer's proposed adjudication. Based on that review, it is obvious that Phan's criminal conduct, for which she

---

may review the Board's action for abuse of discretion. *Ake v. Bureau of Prof'l and Occupational Affairs*, 974 A.2d 514, 519 n. 6 (Pa. Cmwlth.), *appeal denied*, 604 Pa. 708, 987 A.2d 162 (2009).

7. Act of May 3, 1933, P.L. 242, No. 86, *as amended*, 63 P.S. §§ 507–527.

pled guilty, and Nguyen's criminal conduct, for which he pled guilty, are related and, to a certain extent, overlap. Indeed, Phan and Nguyen both pled guilty to facilitating a "sham" marriage between Nguyen and T.V. for the purpose of evading immigration law. But it is equally apparent that the federal criminal justice system held Phan responsible for a broader criminal scheme, whereby she recruited T.V. and A.V. from Vietnam and facilitated their entry into the United States for the purpose of forcing them to work in her salons. To these additional crimes, Phan pled guilty.

That same criminal justice system, however, did not adjudicate Nguyen guilty and culpable for this broader criminal scheme. In pursuing disciplinary action under CHRIA, the Board was authorized to consider the factual pleadings associated with *Nguyen's* guilty plea as detailed in the superseding information. *Commonwealth v. Morrison*, 878 A.2d 102 (Pa.Super.) (holding guilty plea encompasses admission of facts underlying charge), *appeal denied*, 585 Pa. 688, 887 A.2d 1241 (2005). The superseding felony information to which Nguyen pled guilty, however, makes *no* mention of Phan or her conduct/scheme, A.V., trafficking, or forced labor. (R.R. at 19a–20a.) In the end, Nguyen pled guilty only to entering into a sham marriage with T.V. to evade immigration law.

In reviewing the transcript of the consolidated hearing before the hearing officer, we are also struck by the fact that the bulk of the proceeding related to the Bureau's charges against Phan, not Nguyen. The only direct evidence against Nguyen were the records of his criminal prosecution and ultimate guilty plea to the single felony count of evading immigration laws with respect to his marriage to T.V. At no point did the Bureau elicit any testimony or produce any evidence that Nguyen participated in, facilitated, or was complicit in Phan's broader criminal scheme. And even if it had, we again note that the Order to Show Cause directed to Nguyen in this matter does not charge Nguyen with such conduct.

In addition, based on our reading of the transcript and the hearing officer's proposed adjudication, it is clear that counsel for the Bureau, counsel for Nguyen, and the hearing officer appreciated the differences between Nguyen's conduct and Phan's conduct. As noted above, the bulk of the consolidated hearing was devoted to Phan's defense of her license status. In his closing argument to the hearing officer, counsel for the Bureau represented the Bureau's view that Nguyen's single felony conviction of marriage fraud was not as serious as the charges against Phan and deserved a lesser penalty than what he recommended for Phan. (R.R. at 119a.)

The hearing officer's proposed adjudication and order (R.R. 326a–34a), in our view, was appropriately circumscribed to the nature of the charge set forth in the Order to Show Cause.[8] It directly addressed Nguyen's felony criminal conviction to marriage fraud relating to T.V., without reference to A.V., Phan's conduct, Phan's felony convictions, or some broader criminal scheme/conspiracy. The hearing officer made no findings of culpability by Nguyen beyond the claims set forth in the superseding information, to which Nguyen

---

8. We do not mean to suggest that the Board was bound in any way by the hearing officer's proposed adjudication. It was not. *See Schwalm v. Pa. Sec. Comm'n*, 965 A.2d 326, 331 (Pa.Cmwlth.2009). The competing tacks taken by the hearing officer and the Board, however, illustrate why we have concluded that the Board's Adjudication must be vacated and remanded.

pled guilty. And based on her review, the hearing officer recommended more lenient discipline for Nguyen than she recommended for Phan.[9]

We have also carefully reviewed the Board's Adjudication in this matter and its brief on appeal. In so doing, we are compelled to agree with Nguyen that the Board improperly exceeded the scope of the charge against Nguyen before it and, without substantial evidence, attributed culpability to Nguyen for criminal activity that the federal criminal justice system attributed only to Phan. Findings of fact 7 through 10, recounted above, describe the facts supporting the criminal charges to which Phan pled guilty and ascribe a property benefit to Nguyen flowing from Phan's criminal conduct. Yet, the superseding information to which Nguyen pled guilty did not charge him with committing or conspiring to commit any of Phan's crimes or deriving any benefit from Phan's criminal activities.

We also note the Board's decision to quote, in its entirety, *Phan's* Statement Regarding Acceptance of Responsibility and Apology to [T.V.] and [A.V.] in the discussion portion of its Adjudication. But there is no evidence in the record that Nguyen agreed with any of the statements set forth in that document. Indeed, the record shows that the statement is solely that of Phan's, prepared as part of her plea agreement in the federal criminal case. Moreover, in the statement Phan takes responsibility for bringing T.V. and A.V. to the United States and exploiting them. We see nothing in the statement that incriminates Nguyen in Phan's criminal scheme to harm T.V. and A.V.

In its first stated ground to support its decision to revoke Nguyen's license, the Board indicates that it finds Nguyen's crime of marriage fraud "abhorrent." Yet, the sentence that follows focuses not on Nguyen's sham marriage, but "Phan's criminal scheme." The Board then implies that Nguyen somehow knew about this scheme because he lived with Phan and T.V. and pled guilty to marriage fraud. Even if these facts could support a finding that Nguyen was somehow complicit, either though commission or omission, in Phan's criminal scheme, we return to the scope of the charge against Nguyen before the Board. The Order to Show Cause only sought disciplinary action against Nguyen under CHRIA based on his conviction for marriage fraud. It did not charge Nguyen with being complicit in Phan's criminal scheme.

In its second ground, the Board continues to attribute to Nguyen conduct that is not supported by the evidence and is beyond the scope of the charge in the Order to Show Cause:

> Second, [*Nguyen*], through Phan, was able to involve the victim in the profession of cosmetology as a nail technician licensed by this Board. The Board finds a *criminal scheme* the object of which is to utilize the Board's licensing program to obtain involuntary labor unacceptable.

(Adjudication at 11.) There is no record evidence that Nguyen took any affirmative steps to involve T.V. in the profession of cosmetology. To the contrary, Phan testified that she put T.V. and A.V. to work in her salons. Moreover, it was Phan, not Nguyen, who pled guilty to felony charges related to involuntary servitude. Though Nguyen admitted to entering into a sham marriage with T.V., he did not admit to participating in Phan's criminal scheme.

---

9. As noted above, the hearing officer recommended that Nguyen's license be suspended for one (1) year. In a separate recommended decision, the same hearing officer recommended a two (2) year suspension of Phan's license. *Phan,* slip op. at 4.

The references in the Board's Adjudication to Phan's conduct, Phan's criminal scheme, and words ascribing culpability to Nguyen beyond the single felony charge to which he pled guilty are so pervasive that we cannot separate the Board's decision to impose the highest penalty of license revocation from the totality of the Board's stated reasoning. We also cannot say with any degree of confidence that the third and fourth grounds for revocation set forth in the Adjudication—*i.e.,* risk of future violations and damage to the reputation of the profession and public confidence— were in no way influenced by the Board's analysis of the first two stated grounds.

Accordingly, we will not address the final question Nguyen raises on appeal, that being whether the Board abused its discretion in imposing the harshest sanction of license revocation based on Nguyen's felony conviction and in light of mitigating evidence. Instead, we will vacate the Board's Adjudication and remand the matter to the Board for reconsideration of its disciplinary decision against Nguyen in light of this opinion. We recognize that the Board is permitted to give greater weight to the seriousness of Nguyen's criminal conviction than to mitigating evidence. *See Bethea–Tumani v. Bureau of Prof'l and Occupational Affairs,* 993 A.2d 921, 932 (Pa.Cmwlth.2010). In this case, however, the Board must compare the mitigating evidence of record to the seriousness of Nguyen's felony conviction for marriage fraud, which was the only basis for discipline before the Board in the Order to Show Cause.

### ORDER

AND NOW, this 12th day of July, 2012, the order of the Pennsylvania State Board of Cosmetology (Board) is vacated and this matter is remanded to the Board for fur-

ther proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.